IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ERIC HAWKINS, No. 27331-045,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| vs. ) | Case No. 18-cv-2206-NJR |
| ) | |
| ) | |
| **D. SPROUL,** ) | |
| **Warden, USP-Marion,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Petitioner Eric Hawkins, an inmate in the Bureau of Prisons (BOP), filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 to challenge the imposition of disciplinary sanctions against him; specifically, the loss of 41 days of good conduct credit against his sentence. (Doc. 1). Respondent filed a Response to the Petition (Doc. 11), and Hawkins replied. (Doc. 13).

### RELEVANT FACTS AND PROCEDURAL HISTORY

Hawkins was convicted in the United States District Court for the Western District of Missouri and is serving a 96-month sentence for conspiracy to distribute cocaine base. (Doc. 11, p. 1; Doc. 1-1). As of the date of the Response, Hawkins's projected release date was January 11, 2021, taking into account the revoked 41 days.[1] (Doc. 11, p. 1; Doc. 11-3).

---

[1] According to public information on the BOP website, Hawkins is currently scheduled for release on November 21, 2020. Https://www.bop.gov/inmateloc/ (Last visited Apr. 16, 2020). *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases).

1

The disciplinary incident that gave rise to this action occurred on August 11, 2018, while Hawkins was incarcerated at the FCI-Greenville. (Doc. 1, pp. 14-15). An officer searched the cell shared by Hawkins and one other inmate; a homemade weapon was found under the cellmate's locker. (Doc. 1, p. 15). Hawkins was charged with "code 104 'possession of a weapon.'" (Doc. 1, pp. 14, 15). The Unit Discipline Committee (UDC) conducted a hearing on August 23, 2018, and referred the matter to the Disciplinary Hearing Officer (DHO) for further action. (Doc. 1, p. 2; Doc. 11, p. 2; Doc. 11-5, p. 1). The DHO hearing, at which Hawkins appeared, took place on September 11, 2018. (Doc. 11, p. 2; Doc. 11-5). Hawkins denied that the weapon was his, and the DHO noted that his cellmate likewise denied ownership. Based on the location of the weapon in a "common area" of the cell, the lack of corroborating evidence to establish ownership by either cellmate, and the fact Hawkins had occupied the cell for 11 months, the DHO found Hawkins guilty and imposed punishment. (Doc. 11-5, p. 2).

The DHO's report was prepared on September 21, 2018, and it was sent to Greenville to be delivered to Hawkins. (Doc. 11-1, pp. 3-4). Hawkins never received it, however, because he was transferred to USP-Marion on September 24, 2018. *Id.* Hawkins appealed the disciplinary action and the finding of guilt to the BOP's Regional Office on October 23, 2018, noting that he was never given the DHO report. (Doc. 1, p. 14). His appeal attached the incident report, referenced it by number, and included the date of the incident, the offense charged, and the date of the DHO hearing. *Id.* This appeal was rejected, for the reason that Hawkins "did not provide a copy of the DHO report [he] wish[ed] to appeal or identify the charges and date of the DHO action." (Doc. 1, p. 13). On November 14, 2018, Hawkins appealed that rejection to the BOP's Central Office, noting that he could not provide the DHO report which was never given to him. (Doc. 1, p. 12). That appeal was likewise denied. (Doc. 1, p. 3; Doc. 11, p. 3). Hawkins filed his Habeas Petition

on December 26, 2018.

The DHO who conducted Hawkins's disciplinary hearing attested that he only learned about the failure to deliver the DHO report to Hawkins after this habeas case was filed, and then took steps to have the delivery completed. (Doc. 11, p. 4; Doc. 11-1, pp. 9-10). The DHO report was ultimately given to Hawkins on February 14, 2019. (Doc. 11, p. 4; Doc. 11-1, pp. 9-10; Doc. 11-6, p. 4).

### GROUNDS FOR HABEAS RELIEF

Hawkins argues that the BOP's failure to provide him with the DHO report violated his due process rights as set forth in *Wolff v. McDonnell*, 418 U.S. 539, 556-572 (1974). Without this document and its statement of the reasons for the guilty finding, he was prevented from appealing. (Doc. 1, p. 6). The BOP's failure to provide him with the DHO report before his transfer from Greenville prejudiced him because Hawkins was unable to contact his former cellmate to obtain a statement that the weapon did not belong to Hawkins. (Doc. 13, p. 4).

Respondent asserts that Hawkins failed to exhaust his administrative remedies before seeking habeas corpus relief, thus this action should be dismissed without prejudice. (Doc. 11, pp. 4-6). Hawkins counters that his administrative appeal complied with BOP requirements because he included the required information, and the BOP's rejection of his appeal rendered the administrative review process unavailable to him. (Doc. 13, pp. 3-4).

### APPLICABLE LAW

BOP inmates can challenge the loss of good conduct credit through a petition for habeas relief pursuant to 28 U.S.C. § 2241. *Jones v. Cross*, 637 F.3d 841 (7th Cir. 2011); *Waletzki v. Keohane*, 13 F.3d 1079 (7th Cir. 1994); *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Before the Court can consider such a claim, however, the petitioner must exhaust administrative

remedies. *Jackson*, 707 F.2d at 949; *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997).

The exhaustion requirement in Section 2241 cases is not statutorily mandated and thus is not jurisdictional. The Seventh Circuit has recognized that there can be exceptions to the requirement, but "sound judicial discretion governs." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). The Supreme Court has identified two purposes for the exhaustion requirement – protection of the agency's authority and promotion of judicial economy. *Id.* at 1017.

The BOP has created an Administrative Remedy Program which "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The Program "applies to all inmates in institutions operated by the Bureau of Prisons. . . ." § 542.10(b). The Administrative Remedy Program is described in the Response (Doc. 11, p. 3) and in Hawkins's Reply. (Doc. 13, p. 2).

Inmates retain certain due process rights in connection with prison disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The minimum requirements of due process in such proceedings are (1) receipt of written notice of the charges in advance of the hearing, (2) an opportunity to be heard before an impartial decision maker, (3) the right to call witnesses and present evidence where the same will not be unduly hazardous to safety or correctional goals, and (4) a written statement as to the evidence relied on and the reason for the decision. *Wolff*, 418 U.S. at 564-66; *Henderson v. U.S. Parole Commission*, 13 F.3d 1073, 1077 (7th Cir. 1994). In addition to these procedural safeguards, the findings of the disciplinary hearing officer must be supported by "some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445 (1985); *see also Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007); *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). The "some evidence" standard is a low bar, which the Seventh Circuit has described as a "meager threshold." *Scruggs*, 485 F.3d at 941 ("once the meager threshold has

been crossed our inquiry ends").

## DISCUSSION

Failure to exhaust administrative remedies is an affirmative defense on which the respondent has the burden of proof. *Dale v. Lappin*, 376 F.3d 652, 655-56 (7th Cir. 2004). Here, Respondent has not established that Hawkins failed to exhaust his administrative remedies.

Hawkins took all the steps available to him to pursue his administrative appeal within the weeks following the DHO hearing on September 11, 2018. As the DHO's written report setting forth the factual basis and reasoning for the decision to revoke his good conduct credits was not delivered to Hawkins, he could not know the date it was issued or the deadline for him to appeal. Some six weeks after the hearing, on October 23, 2018, Hawkins sent his appeal to the Regional Office. His written appeal included the disciplinary charge (code 104 "possession of a weapon"), the Incident Report Number (315705), the date of the incident, the date of his DHO hearing, and explained that he was not given the DHO report. (Doc. 1, p. 14). The reason given for the Regional Office's rejection of this appeal was that Hawkins "did not provide a copy of the DHO report . . . *or identify the charges and date of the DHO action*." (Doc. 1, p. 13) (emphasis added). However, based on the very language of the Regional Office's rejection notice, Hawkins had complied with the appeal requirements – his rejected appeal identified the charge and provided the date of the DHO action, as well as other relevant details. That information was sufficient for the Regional Office to have obtained the documentation necessary to complete its review, or to ensure that the DHO report would be sent to Hawkins. The record demonstrates that Hawkins could not have resubmitted his appeal with the missing document within ten days as directed, because he did not receive the DHO report within that time frame. (Doc. 1, p. 13; Doc. 11-1, pp. 3-4; Doc. 11-5, p. 3; Doc. 11-6, p. 4).

Based on these facts, Hawkins argues that the "BOP chose to reject his properly filed administrative remedies." (Doc. 13, p. 3). The Court agrees. Hawkins complied with the requirements set forth in the Regional Office's response to his appeal, and the rejection of his appeal left him with no other available administrative remedies to exhaust before filing his Petition for federal habeas relief.

Respondent argues that when Hawkins belatedly received the DHO report on February 14, 2019 (more than a month after this action was filed), the delivery "triggered Hawkins's 20 days to file an appeal through the administrative remedy program." (Doc. 11, p. 4). Respondent notes that there is no deadline for the issuance of a DHO report, and the fact that it was nearly five months late does not amount to cause for excusing Hawkins from the exhaustion requirement. (Doc. 11, p. 5). But unlike the case Respondent cites in support of this argument, Hawkins did not "jump the gun" by prematurely seeking federal court relief rather than waiting for the DHO to produce the report. *Id.* (citing *Moon v. Walton*, No. 12-cv-1152-CJP, 2014 WL 788895, *2 (S.D. Ill. Feb. 27, 2014)).[2] Instead, Hawkins took all the steps available to him after the BOP failed to deliver the DHO report to him upon its completion.

The record in this case shows that if Hawkins had not filed this habeas action, he likely would never have received the DHO report at all. Despite the fact that his administrative appeal plainly stated that he was never given the DHO report, the BOP took no steps to provide him with

---

[2] The petitioner in *Moon* claimed that the BOP had an obligation to provide him with the DHO report within 15 days, and the failure to do so should excuse him from the exhaustion requirement. His DHO report was completed approximately four months after the hearing. (Doc. 16-3, pp. 2-3). BOP rules do not create a mandatory time frame for producing the DHO report. Moon did not attempt to show that he was prejudiced by the delay, and he did not demonstrate cause for his failure to exhaust once he received the report.

6

the missing document. Action was taken only after Hearing Officer Puckett discovered the failure of delivery, following service of the Habeas Petition. (Doc. 11-1, pp. 3-4). Respondent's theory that Hawkins "simply had to wait until he received the DHO Report and then appeal" (Doc. 11, p. 5) is disingenuous in the context of the facts presented in the Response – if Hawkins had "simply waited," the report would never have come. Respondent's assertion that Hawkins made no attempt to obtain the DHO report fails to recognize that Hawkins's Regional Level appeal itself advised the BOP that he had never been given the report, which had been completed a month before Hawkins filed his appeal. And again, Hawkins's appeal included the information that the Regional Office stated was necessary for his appeal to proceed. Under the specific facts of this case, Hawkins exhausted his available administrative remedies; he should not be required to bear the consequences of the BOP's failure to meet its due process obligation. *See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (prison employees "should not be rewarded for preventing an inmate access to an administrative remedy") (citing *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir. 2001) (a remedy that prison officials prevent a prisoner from utilizing is not "available")).

Alternatively, if Hawkins were deemed to have failed to exhaust his administrative remedies, he has demonstrated cause for the failure as well as prejudice. *See Sanchez v. Miller*, 792 F.2d 694, 697 (7th Cir. 1986); *see also Moore v. Casnerson*, 345 F.3d 474, 486 (7th Cir. 2003). Here, the BOP's failure to deliver the DHO report to Hawkins constitutes cause – it was an objective factor beyond his control, which prevented Hawkins from submitting the DHO report along with his written appeal. Notably, in this case the DHO report itself was not delayed – it was prepared in a timely fashion, but a series of errors by prison officials caused the delivery failure. Hawkins was summoned to the Greenville office to pick up the report, but he failed to appear because he had already been transferred to Marion, a fact which officials could readily have

discerned. A Greenville officer then wrote "RTS" in the space for documenting delivery to the inmate, with no other explanation, and returned the report to the DHO undelivered. (Doc. 11-1, p. 3). The DHO believed the "RTS" notation to be a confirmation that the report was delivered to Hawkins, rather than what in hindsight now appears to have been an abbreviation for "return to sender." The DHO report thus became a "dead letter" and no further attempt was made to deliver it to Hawkins at his new institution.

A failure to exhaust may be excused where "(1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (citing *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002)). Hawkins meets the first of these requirements. He explains that because he did not receive the DHO report with the statement of reasons for the decision until after he left Greenville, he has been prejudiced because he is no longer able to meaningfully appeal by obtaining a statement from his cellmate. (Doc. 13, p. 4). Recall that the homemade weapon was found under the cellmate's locker, not under Hawkins's locker. The prison considers both locations to be "common areas" of the cell and holds both of the cell occupants equally responsible for contraband found there, in the absence of contrary evidence. (Doc. 11-5, p. 2). At some point after the DHO hearing, Hawkins's cellmate told him that he would "provide a declaration that the weapon found was not Hawkins." (Doc. 13, p. 4). But after Hawkins was transferred, he became unable to contact his former cellmate to obtain that declaration in order to challenge the disciplinary action on its merits.

The failure to provide the DHO report violates one of the minimal due process requirements set forth in *Wolff*. "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-172 (1951) (Frankfurter, J., concurring)). Without the DHO's statement of the evidence relied upon and the reasons for the guilty finding, Hawkins did not have the notice he needed in order to prepare his appeal to refute that evidence and reasoning. Hawkins's transfer to another prison, while the DHO report sat undelivered, cut him off from the ability to obtain his former cellmate's declaration admitting ownership of the contraband. Without that admission, Hawkins had no way to mount a meaningful challenge to the disciplinary sanction. Even if Hawkins were to have sought administrative review of the matter after finally receiving the DHO report in February 2019, he still had no opportunity to get the statement from the former cellmate. (Doc. 13, p. 4). The BOP's failure to comply with the *Wolff* due process requirement prejudiced – indeed, foreclosed – Hawkins's ability to appeal the merits of the disciplinary action.

For these reasons, Hawkins was denied due process. His Petition shall be granted, and his good conduct credits restored to him.

### DISPOSITION

Eric Hawkins's Petition for writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1), is **GRANTED,** and the following relief is **ORDERED**:

> Respondent Sproul shall take all necessary steps to expunge Incident Report No. 3157075, dated August 11, 2018, charging Eric Hawkins, Reg. No. 27331-045, with Prohibited Act 104-possession of a weapon, and to restore to Hawkins the 41 days of good conduct sentence credit revoked in the Discipline Hearing Officer Report dated September 21, 2018.

The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

    **IT IS SO ORDERED.**

    **DATED:  April 17, 2020**

    _____
    **NANCY J. ROSENSTENGEL**
    **Chief U. S. District Judge**